# THE GRUBER ALMANACK COMPANY *vs.* OTHO SWINGLEY.

*Trade Name—Misrepresentations in Plaintiff's Publications Held to be Immaterial.*

In 1835 and annually thereafter one J. Gruber published an almanac called the Hagerstown Town and County Almanack which publication is now continued by the plaintiffs who are his descendants. Defendant in 1905 published an almanac called the "J. and C. Gruber's Hagerstown Town and Country Almanack for the year 1906," on the title page of which and elsewhere, the emblems, name, devices and general appearance of plaintiffs' almanac were imitated in such a manner as to deceive the public and induce the belief that the defendant's almanac was that of the plaintiffs. Upon a bill for an injunction to restrain this publication the defense relied on was that on the title page and elsewhere the plaintiff's almanac contained such material false representations as deceived the public and disentitled the plaintiffs to relief in equity. The alleged false statements were that the almanac was printed and sold by J. Gruber at Hagerstown and was copyrighted by him, whereas J. Gruber was long since deceased, and that J. Gruber had in 1874 authorized the Gruber Almanac Company to publish the almanac. *Held*, that these statements, although not strictly true, are immaterial and not such misrepresentations as are calculated to deceive the public, and that the plaintiffs are entitled to an injunction restraining the imitation of their trade name.

Appeal from the Circuit Court for Washington County (KEEDY, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edgar H. Gans* and *J. Clarence Lane* (with whom was *Wm. Kealhofer* on the brief), for the appellants.

It appears from the bill and exhibits that from 1835 to 1854 John Gruber printed the almanack himself, aided by his then immediate family. The two outside covers were always kept the same, and he had it copyrighted every year. This covers a period of nineteen years.

During the four years, from 1854 to 1858, John Gruber was too old and infirm to carry on the business, so he authorized William Stewart and Thomas G. Robertson to publish the almanack. The authorization was published on the second page of the almanack—*e. g.*, the inside page of the outside cover. The bill shows that from this year, 1854, there was always a printed authorization of some one to publish the almanack; *that is, for a period of fifty-two years*, although the outside cover always contained the words "J. Gruber's" Almanack and "Printed by John Gruber."

John Gruber died in 1858. From 1858 to 1866, the year of her death, the almanack was published by Catherine Gruber, his widow, under the business management of Thomas G. Robertson, a copy of the authority being printed in each and every issue of the almanack. The bill shows that from 1858 to the present day, *a period of forty-eight years*, every almanack contained the statement that John Gruber was deceased and the publication was continued by members of his family. Catharine Gruber during this period took out a copyright in her own name each year, though each almanack had a front and back cover precisely as Exhibit 1 and 2, and each contained the words "J. Gruber's" Almanack and "Printed by John Gruber." The bill alleges that the almanack was published by Catharine Gruber *under the name of J. Gruber* during all this time. From 1858, therefore, until the present time, *a period of forty-eight years*, the name "J. Gruber" and "John Gruber" has been a trade name, adopted by his family, he being known to be deceased.

On the death of Catharine Gruber, his widow, two of the children, M. L. and F. C. Gruber, continued the publication *under the name of John Gruber*, under the business management of Thomas S. Robertson, for the benefit of themselves and the other members of the family, whose names are not mentioned, and a printed copy of the authority appeared in each copy of the almanack. The same front and back outside covers were used. The copyright was taken out each year in the names of M. L. and F. C. Gruber.

M. L. Gruber died in 1874.   From 1874 to 1884, the alma-
nack was published by the surviving members of the family of
John Gruber, under his name.   The notice signed by the mem-
bers of the family is not set out in the bill, but from the 3d
page of Exhibit I it is evident that they were F. C. Gruber
W. L. May, as this notice is dated 1874.   The notice to the
trade is set out, and from this it appears that even in the notice
the family signed themselves by their trade name "John Gru-
ber," the notice reading *"we have authorized,"* etc.; signed John
Gruber; and from that time also they took out the copyright
in the trade name "J. Gruber," notice of which was printed
on the front cover of every copy of the almanack, just as is
found in Exhibit I.   This was thirty-two years ago.

During the first ten years of this period, from 1874 to 1884,
the family of John Gruber authorized M. A. Berry of Hagers-
town to publish the almanack, and M. A. Berry associated
with him Otho Swingley, *the appellee in this case,* as co-part-
ner.   In 1878 the almanack was pirated by one Caroline V.
Robertson, and a bill was filed by M. A. Berry and Otho
Swingley, co-partners, against her, for an injunction.   The
bill was demurred to but was overruled and the injunction
granted, which decree was sustained by this Court in the case
of *Robertson* v. *Berry,* 50 Md. 591.

At that time, *i. e.,* 1878, *John Gruber had been dead for
twenty years* as appears on the face of the bill, and the alma-
nack for that year filed as an exhibit had the same front and
back covers as now, with the same words "J. Gruber's" alma-
nack and "Printed by John Gruber" on the front cover.   No
point was made by Mr. S. Teackle Wallis, who tried the case
for Mrs. Robertson, that there was any fraudulent misrepre-
sentation, nor did any such point occur to the Court, at least
so far as the opinion shows.   The bill in that case alleged that
the family of John Gruber, after his death, continued the pub-
lication of the almanack under the name of John Gruber,
and this bill was sworn to by Otho Swingley, the appelle in
this case.

From 1884 to 1894 the condition was the same, except that

Otho Swingley dropped out as one of the publishers, and M. A. Berry continued alone to publish under the authority of the family of John Gruber. We call attention just at this point to the fact that the notice in 1884 is dated July, 1874, and as we will see the notice in 1895 to the Gruber Almanack Co. was dated July, 1874, and in Exhibit 1 the notice of 1906 is dated July, 1874. It is evident that the publisher simply took the old original notice of July, 1874, and filled it in with the name of the authorized publisher or licensee from year to year, without changing the date. This, of course, is erroneous and careless, but certainly immaterial.

In 1894 the present appellants, who are alleged to be surviving members of the family of John Gruber, continued to print the almanack under the name of "John Gruber." "John Gruber," the trade name, which had been used since John Gruber's death in 1858, but instead of authorizing a licensee, Wilfred H. McCardell, to do the publishing for them himself, associated him with them under the name of the Gruber Almanack Co., so that since 1894, though the family published the almanack under the name of "J. Gruber," and "John Gruber," as heretofore, making no change in this particular, they have associated their business manager with them under the name of the Gruber Almanack Co., and the name was also printed on the front outside cover as the company to which orders were to be sent. The copyright was yearly procured in the name of "J. Gruber," as heretofore, and so stated on the front outside cover.

The history of the almanack prior to 1835 is stated in the almanack issued by the appellee, on the page just inside of the back outside cover. From this it appears that the first publication of an almanack by John Gruber was in 1797, but it appeared only in the German language until 1822. Its present name was first adopted in 1835, as stated in the bill. John Gruber, therefore, began to publish an almanack one hundred and nine years ago.

This case is really concluded by the decision in *Robertson* v. *Berry*, 50 Md. 591. But apart from that there is as matter of fact no misrepresentation

The appellants claim that "J. Gruber" and "John Gruber" are trade names which are fixed and invariable, and have been adopted and used by the family of John Gruber ever since his death in 1858. The family of John Gruber, using the term family as meaning next of kin, has, in the course of nature, by deaths and marriages, been changed both in individuals and names; therefore, to prevent confusion, it was deemed advisable always to have the family represented in the trade by the name of their common ancestor, "J. Gruber" and "John Gruber," the originator of the almanack and the person who gave it its original circulation. The right of the family to trade under this name was decided in 50 Md.

To this must be added all the other circumstances—(*a*) That this is a book intended to be read, and not like a patent medicine the ingredients of which are secret. (*b*) That it appears annually. (*c*) That the trade has been told since 1858, a period now of forty-eight years, every year and in every copy of the almanack, that John Gruber was dead and that his family was printing it under his name, which was the trade name of the family. (*d*) That from the nature of its publication, its circulation is comparatively limited, and it goes every year to practically the same people. Taking all these circumstances into consideration, no Court can find any intent to deceive, nor under all the circumstances is deception of the public the natural consequence of the use of the trade name.

The Court below and counsel for appellee rely mainly on the case of *Siegert* v. *Abbott*, 61 Md. 276. In that case the thing sold was an article prepared by a secret process, and the public were obliged to rely upon the skill and honesty of the person preparing it. Dr. Siegert during his life had secured a great reputation for the article, based upon his personal skill and honesty. The public could not analyze the article, but bought it on the faith of its having been prepared by Dr. Siegert, a *fac simile* of whose handwriting was on the label. In the case at bar the thing sold is a book, its contents capable of being examined by every purchaser and judged of on their merits. In the Siegert case there was no intimation anywhere

that Dr. Siegert was dead, and that his name was being used as a trade name to keep up the continuity of the business. In the case at bar, the fact that Gruber was dead, has been told to the trade in the very thing sold every year for nearly fifty years.

Looking to the nature of the thing sold, and assuming for the purpose of the argument only that the statements on the outside cover of the almanack would imply that John Gruber is still living, is there anything in the case as stated from which it may, with any certainty, be inferred that this is a material statement, or that the public would cease to buy if the public knew that John Gruber was dead? Obviously, the almanack has now a large circulation in places where without doubt the community knows that John Gruber has been dead for many years.

The astronomical calculations are not made by Gruber for on the inside title page it is stated that they are made by Will R. Ibach, son of Lawrence J. Ibach, and this Court judicially knows that in 1878 the astronomical calculations were made by Lawrence J. Ibach. The other part of the almanack is simply a collection of miscellaneous matter supposed to be interesting to persons living in the town and county. The ordinary title of the almanack is the Hagerstown Almanac, as may be seen on inspecting the whole book. The book is evidently salable because it is an old-established institution, which the people like because they have become familiar with its arrangement and find the information which it contains useful. The words "J. Gruber" or "John Gruber" simply indicates to them that it is practically the same thing in substance that they have been for many years accustomed to, they mark the unbroken continuity of the old Hagerstown Almanack. This is shown by the notice that the Gruber Almanack is the only genuine Hagerstown Almanack, genuine in the sense that it is the only legitimate continuation of the old almanack to which the people have long been accustomed. This principle was fully stated in *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 4 De G. and J. & S. 137, a case referred to by this Court in *Siegert* v. *Abbott*, 61 Md. 286.

The other errors alleged are (1) that it is represented that the Gruber Almanack Company was authorized to publish the almanack in 1874, when it should have been 1894, and that the almanack is owned by the daughter and granddaughter of John Gruber. Obviously these statements are immaterial. The explanation is that the old forms were used, when strictly they should have been changed. But it is evident that no one buys the almanack on account of the supposition that the Gruber Almanack Company was authorized in 1874 instead of 1894, and it is entirely immaterial to the public what particular members of the Gruber family are publishing it at any stated time.

Errors of this kind have frequently been before the Courts. In *Dale* v. *Smithson*, 12 Abb. Pr. (N. Y.) 237, the right of Thomas Nelson Dale to an injunction for an infringement of trade-mark, not refused on ground he sold under fictitious name of Thomas Nelson & Co., as there was no fraudulent intent, and the public was not deceived, as there was no firm known to the trade of the same name.

In *C. F. Simmons Medicine Co.* v. *Mansfield Drug Co.*, 93 Tenn. 84, plaintiff filed a book title showing his connection with the business in a year when there was no provision for the registration of trade-marks, held : that a statement in the packages of medicine "Trade-Mark Registered" did not disentitle him to relief.

In *Clark Thread Co.* v. *Armitage*, 74 Fed. Rep. 936, a statement was made that prize medals had been awarded from 1855 to 1878. There was a mistake in the date, but the Court held it immaterial.

In *Tarrant & Co.* v. *Johann Hoff*, 76 Fed. Rep. 959 (C. C. A.) the complainant, Johann Hoff, asked an injunction restraining defendant from using trade-mark "Hoff's Malt Extract," which was easily confused with "Johann Hoff's Malt Extract." Relief asked was granted, and it was decided that some statements on the labels, *survivals from older labels*, which are not accurate, such as "Moritz Fisher, Sole Agents for U. S." were immaterial and did not lead the public to believe that the extract was made in Germany, as complainant had been to

considerable expense to advertise its manufacture in the United States.

In *Centaur Co.* v. *Robinson*, 91 Fed. Rep. 889, the fact that the wrappers in which a medicine is placed on the market contain an erroneous statement that the compound is purely vegetable, where the same wrapper truthfully gives the formula in accordance with which it is made, is not such fraud as will defeat the right of the manufacturer to relief for unfair competition.

In *Societe Anonyme* v. *Western Distillery Co.*, 43 Fed. 416, the fact that complainant, the manufacturer of a cordial, made according to a recipe obtained from the Benedictine monks, attaches to the bottles, labels and advertisements stating "Genuine Benedictine Liquor of the Benedictine Monks of the Abbey of Fecamp" does not preclude relief against an infringement, such phrases not being representations that the Benedictine monks are still engaged in its manufacture at Fecamp, but that it originated with them, especially when one of the advertisements shows that the cordial is manufactured by the complainant, a corporation.

In *Wormier* v. *Shayne*, 111 Ill. App. 556, when in connection with the use of a trade name the word "copyright" is used when no copyright actually exists, it is not sufficient to bar right to injunction ; nor does the fact that, in connection with the trade name, the owner claimed ten stores in different cities when he only had seven defeat the action.

In *Block* v. *Standard Distillery Co.*, 95 Fed. Rep. 978, complainant was held not disentitled to relief because, though really a firm, their business is conducted under the name "Standard Distillery Co.," which implies a corporation.

There are a number of cases which illustrate the manner in which Courts construe representations when there is no actual fraud. Invariably the construction is broad and liberal and not narrow or strict, and all immaterial errors are brushed aside. *De Long Hook and Eye Co.* v. *Francis Hook and Eye Co.*, 139 Fed. Rep. 146 ; *Insurance Oil Co.* v. *Scott*, 33 La. Ann. 946; *Siegert* v. *Abbott*, 72 Hun. 243; *City of Carlsbad*

370 GRUBER ALMANAC CO. vs. SWINGLEY.

v. *Kutnow*, 71 Fed. Rep. 167; *Clark Thread Co. v. Armitage*, 74 Fed. Rep. 936; *Moxley Co.* v. *Braun*, 93 Ill. App. 183; *Conrad* v. *Joseph Urig Brewing Co.*, 8 Mo. App. 277; *Gluckman* v. *Strauch*, 99 App. Div. (N. Y.) 361.

It appears from the record in this case that the appellee and a certain M. A. Berry, in 1878, were the business managers and agents of the Gruber family in the publication of the J. Gruber Hagerstown Town and Country Almanack, which is now published by the appellants, and in said year filed a bill of complaint in the Circuit Court of Baltimore City against a certain Caroline V. Robertson, to restrain her from publishing an almanack in simulation of the said J. Gruber's Almanack, and secured from the Court, sitting as a Court of Equity, in Baltimore City, a decree restraining the said Robertson from publishing the said almanack, which case, upon appeal to the Court of Appeals, was affirmed in 50 Md. p. 591. To the bill of complaint filed in that cause, containing practically the same allegations as those in the present bill, the appellee in this case made oath. The injunction in that case, granted by the Court below and affirmed by the Court of Appeals, restrained the said Robertson, her agents, servants, attorneys in fact and representatives, from publishing the almanack in violation of the rights of the said Otho Swingley, the appellee in this case, and the said M. A. Berry.

Under these facts in this case the appellants contend, that the appellee in this case, Otho Swingley, is estopped from showing or doing anything in dereliction of the appellants' rights and property, and cannot be heard in a Court of Equity to invoke or demand a judgment of such a Court, which may and will result in his escaping from the effect of the injunction still in force, which was granted by the Court in the 50 Md. case, at his instance and for his benefit.

"A man shall not be allowed to blow hot and cold, to claim at one time and deny at another."

"A party will not be allowed to claim at one time in one right, and then at another, set up a claim not only inconsistent with but in fact utterly denying the first." *Edes* v. *Garey*, 46

Md. 24, 41; *Fisher* v. *Boyce*, 81 Md. 52; *Marine Bank* v. *Heller*, 94 Md. 213, 217; *Reichard* v. *Izer*, 95 Md. 451, 462; *Henderson* v. *Henderson*, 3 Hare, 115.

*Morris A. Soper* (with whom was *Henry P. Bridges* on the brief), for the appellee.

Two important allegations in the bill show—first, that John Gruber "by his skill in the order and arrangement of the calendar of his said almanack, and ·by the variety of the miscellaneous matter contained therein, acquired the good will of the public and a large circulation;" and second, "that sometime during the year 1858 the said John Gruber died."

Consider in connection with these admitted facts the following erroneous statements to be found upon the title page and among the contents of appellant's almanack.

1. At the top of the title page appear the words "Entered according to the Act of Congress, in the year 1905, by *J. Gruber*, in the office of the Librarian of Congress, at Washington."

2. The title of the almanac, "J. Gruber's Hagerstown Almanack."

3. Near the bottom of the title page appear the words: "Hagerstown, Md., Printed by John Gruber."

4. At the top of the second page appears a notice, signed "John Gruber," dated *Hagerstown*, July, 1874, authorizing the Gruber Almanack Company to publish the almanack.

5. At the bottom of the third page appear the words:

Hagerstown, Md.

Printed and sold by John Gruber, South Potomac street.

These statements, in connection with the facts that John Gruber once lived and wrote or arranged the contents of the publication, justify, if they do not compel, the following inferences, all of which are untrue:

1. That John Gruber was alive in 1905.

2. That John Gruber wrote or arranged the contents of the almanack of 1906.

3. That John Gruber printed and sold the almanack.

4. That the Gruber Almanack Company has been publishing the almanack since 1874.

Now it is manifest from the allegations of the bill that the almanack acquired its reputation, and the property in the so-called trade-marks acquired its value, through the work of John Gruber. It is stated in the bill, that the name of J. Gruber has acquired a peculiar value in connection with the publication, and in connection with the emblems, devices, pictures, order of arrangement, etc., of the almanack. The present owners are evidently convinced that the best way to retain its popularity amongst the people, and its value to themselves as a business proposition, is to preserve it in the exact form in which John Gruber published it. But it cannot be published by merely copying the contents of the almanack upon which he actually worked. The conjectures of the weather, the phases of the moons and planets, the relative situation of these bodies, and the constellations by which it seems that many people regulate the actions of their every day lives, and which are characteristic featutes of the almanack, differ in every year. Skill and care are required correctly to state these changes as they occur. Furthermore, the almanack contains information interesting, and it may be useful to a farming community, and advice upon many subjects, the value of which must largely depend upon the identity of the author or compiler.

It is, therefore, an important fact in the case that the appellants still declare to the public that John Gruber is the author or compiler of the almanack, whereas in truth he died in 1858. It is laid down in numerous cases in equity that if there is any misrepresentation used by complainants in connection with a trade-mark by which the public may be deceived as to the identity of the manufacturer, or the place of manufacture, or the ingredients, or the merits of the article covered by the trade-mark, that the Court will not grant an injunction no matter how flagrant the infringement may be. *Siegert* v. *Abbott*, 61 Md. 276; *Kenny* v. *Gillett*, 70 Md. 574; *Houchens* v. *Houchens*, 95 Md. 37.

In Hagerstown, or perhaps in Washington County, where

the facts are known, it may be that the Gruber Almanack does not deceive the people. · But on the title page it appears that the almanack is sold in Baltimore; Somerset, Pa.; Washington, D. C.; Chambersburg, Pa.; Staunton, Va.; Frederick, Westminster and Cumberland, Maryland; Worcester, Va.; Pittsburg, Pa., and Cincinnati, Ohio. Can the Court presume that the many thousands in these cities who buy the almanack are sufficiently acquainted with all the facts not to be deceived?

The title page contains nothing to controvert the belief which the statements there made necessarily create in the mind of a purchaser, that John Gruber is the author or compiler. The notice at the top of the second page, to the effect that the Gruber Almanack Company is the publisher, is not sufficiently conspicuous to counteract this false impression. But even if it were prominently · displayed it would merely serve as a notice that the company was the publisher. John Gruber, the author or compiler, who apparently secured the copyright, signs it. Moreover, as stated above, this notice is in itself misleading, for neither John Gruber nor the company were in existence in 1874.

BRISCOE, J., delivered the opinion of the Court.

On the 9th of September, 1905, the appellants, co-partners, trading as the Gruber Almanack Company, filed a bill in the Circuit Court for Washington County, for an injunction to restrain and prohibit the appellee from publishing, circulating · or selling an almanack designated as "J. and C. Gruber's Hagerstown Town and Country Almanack for the year 1906," and also from publishing or circulating, or causing to be published or circulated "any other almanack in colorable imitation of the appellant's almanack and calculated to deceive and impose upon the public and to create in their minds the belief that such almanack is really and truly the appellant's almanack." Upon the bill and exhibits, a preliminary injunction was granted and a demurrer to the bill was subsequently interposed by the appellee. The demurrer was sustained by the Court below, and the injunction as granted was dissolved.

And from orders of Court sustaining the demurrer and dissolving the injunction, this appeal has been taken.

The allegations of the bill and the relief sought are based upon the statement that the appellee is publishing and selling an almanac in fraudulent imitation of the appellant's almanack.

The ground of the demurrer being that the plaintiffs have not stated in their bill such a case as entitled them to any relief in equity, it will be necessary for us to consider the principal allegations of the bill upon which the relief is asked.

The bill alleges that one John Gruber, the ancestor of all the plaintiffs (except Wilfred H. McCardell), began in or about the year 1835, to print and publish a certain publication to which he gave the name of "J. Gruber's Hagers-Town Town and Country Almanack," and that for the purpose of distinguishing this almanack from other publications he adopted and made use of certain devices, emblems, representations, marks, and pictures which he combined in a manner entirely new and original, and that these devices, emblems, marks and pictures are the same as those shown on the front outside cover and the back outside cover of the plaintiff's almanac; that they were the means by which the plaintiff's almanac was known and distinguished by the trade and acquired its good will, and that this almanac has been published by Gruber and his family from the year 1835 to the present time.

The bill also charges that a copyright of each and every edition of the almanack has been entered in the name of "J. Gruber" for the use and benefit of the members of the family and that in every issue and publication the name of "J. Gruber" has been used in the same manner as by Gruber himself, in his lifetime, that the name "J. Gruber," in connection with the emblems, devices, pictures, etc., are of great value in the publication of the almanack, and are their sole and exclusive property.

The bill then avers that the defendant with a view and intent to deceive and mislead the public and to likewise injure and defraud them, is engaged in publishing and selling an al-

manack for the year 1906, in the manner and form, size and style substantially like and uniform with the one published by them; that the fraudulent simulation is so substantial an imitation and so similar to the appellant's almanack as to impose upon the public and to induce them to purchase the false and spurious one for the appellants' almanack to their damage and injury.

It will thus appear from the foregoing recitals, as set out in the bill, that the question presented by the appellee's demurrer is whether the appellants have made out a case for equitable relief by a writ of injunction.

The bill charges and the demurrer admits, that the appellee is engaged in publishing and selling an almanack in imitation of the one published by the appellants, and it is conceded by the appellee in his brief that in the case of *Robertson* v. *Berry*, 50 Md. 591, this Court held upon a consideration of the history of the appellants' almanack that the complainants had acquired a property right, in the devices, emblems and title pages in question by adoption and user.

But it is insisted upon the part of the appellee, that the appellants are not entitled to the relief sought for the following alleged erroneous statements to be found upon the title page, and among the contents of the almanack.

1st. At the top of the title page appear the words "Entered according to the Act of Congress, in the year 1905, by J. Gruber in the office of the Librarian of Congress at Washington."

2. The title of the almanack, "J. Gruber's Hagerstown Almanack."

3. Near the bottom of title page appear the words. "Hagerstown, Md.  Printed by John Gruber."

4. At the top of the second page appears a notice, signed "John Gruber" dated Hagerstown, July, 1874, authorizing the Gruber Almanack Company to publish the almanack.

5. At the bottom of the third page appear the words.
                    Hagerstown, Maryland.
Printed and sold by John Gruber, South Potomac street.
Now conceding to the appellee's contention all the force

that can be claimed for it, we do not think, it can defeat the right of the appellants to relief in this case.

Manifestly, the alleged errors in representation were not such as to deceive the public and are therefore entirely immaterial.

In *Canal Company* v. *Clarke*, 13 Wall. 302, the Supreme Court held, that words or devices may be adopted as trademarks which are not original inventions of him who adopts them and Courts of equity will protect him against any fraudulent appropriation or imitation of them by others. And in the case of *Robertson* v. *Berry & Co.*, 50 Md. 602, decided in February, 1879, it was said by this Court in passing upon the questions, practically here at issue, that in such cases the adoption and use must be under such circumstances of good faith as to satisfy the Court that the plaintiff is not himself practicing a fraud upon the public. He must explain how he came to such adoption and use or in other words, he must come into Court with clean hands. And in dealing with a similar bill, this Court said: "It seems to us to be clear that such explanation is abundantly given by the bill in this case, and the adoption and user thus made out entitle the complainants to the injunction prayed for."

The cases cited and relied upon by the appellee rest upon an entirely different rule of law and are clearly distinguishable from this. In the case of *Seigert* v. *Abbott*, 61 Md. 287, this Court distinctly said, "this decision is not intended to depart from any of the principles established in *Robertson* v. *Berry & Co.*, 50 Md. 591."

As in our opinion, the case of *Robertson* v. *Berry, supra*, is decisive of this, it becomes unnecessary to discuss the remaining question raised on the record. For the reasons given, the orders of Court below will be reversed, the injunction will be re-instated, and cause remanded with costs.

> *Orders reversed, the injunction reinstated and cause remanded with costs.*

(Decided April 6th, 1906.)